```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Mesfen A. Rowell

    v.                                    Case No. 19-cv-419-JL

Sgt. FNU Vissa, Nurse FNU Bancroft,
Hillsborough County Department of Corrections


### REPORT AND RECOMMENDATION

Before the court is the complaint (Doc. No. 1) filed by pro se plaintiff, Mesfen A. Rowell, currently an inmate at the New Hampshire State Prison ("NHSP"). Mr. Rowell was a pretrial detainee at the Hillsborough County Department of Corrections ("HCDOC") at all times pertinent to this action. The complaint is before this magistrate judge for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a).


### Preliminary Review Standard

The court may dismiss claims asserted in an inmate's complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To

determine whether to dismiss claims for failure to state a claim, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether plaintiff has stated a claim upon which relief can be granted. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Background

Mr. Rowell alleges that he arrived at the HCDOC on July 15, 2018 after 10:00 p.m. He further alleges that before his arrival, officers arresting or transporting him had used a taser on him. Mr. Rowell asserts that he felt disoriented because of the tasing incident and asked the HCDOC booking officer to give him a few minutes to overcome his disorientation before completing the booking process. The booking officer then radioed the HCDOC sergeant on duty, Sgt. Vissa, who came into the booking area a few minutes later. Mr. Rowell alleges that he explained to Sgt. Vissa that he needed time to recover from having been tased before officers at the HCDOC booked him. Sgt. Vissa responded by grabbing Mr. Rowell's arm and bringing him to the property room. Mr. Rowell asserts that Sgt. Vissa pushed him into a corner in the property room and struck him on the

left side of his face, causing the right side of his face to hit the wall, opening a cut above his right eye.  Sgt. Vissa then brought Mr. Rowell, bleeding from that cut, back to the booking area and handcuffed him to a table, threatening more violence if he were to report the incident, and saying, as alleged by Mr. Rowell, that since he was a "N****r," no one would believe him or care about what happened.

Shortly after that incident, HCDOC Nurse Bancroft interviewed Mr. Rowell as part of the booking process, while Sgt. Vissa stood behind Mr. Rowell's chair.  Mr. Rowell asserts that he pleaded with the nurse for help and complained that he was in a lot of pain, but she provided no care for his injuries. Using the wet towel Sgt. Vissa handed to her, Nurse Bancroft wiped the blood from his face then continued to ask him booking questions as he sat there bleeding, and he asserts, she did not report his complaints to her supervisors in the HCDOC medical department.

Mr. Rowell asserts that after the July 15, 2018 booking incident, he began to suffer from severe headaches, ringing in his ears, nightmares for months, and PTSD.  Mr. Rowell further asserts that he wrote out inmate requests and submitted verbal grievances, asking to have an outside specialist determine if he had a head injury, but he received no further medical care for

3

his injuries other than ibuprofen. He states that he was scared for his life while he remained at the HCDOC, because Sgt. Vissa continued to work in his housing unit, even though Mr. Rowell had complained to a supervisory officer, Lt. Fitzpatrick.

Mr. Rowell claims that there has been a cover-up of the events described in his complaint. He alleges that he filled out inmate requests forms and made verbal grievances about the incident and his injuries, but those forms were discarded, and his grievances were ignored. Although Lt. Fitzpatrick promised to help, it appeared to Mr. Rowell that nothing was done since the nurse was not fired, and Sgt. Vissa continued to work in Mr. Rowell's housing unit. Mr. Rowell further asserts that he has asked to see incident reports about what happened to him on July 15, 2018 but has been told that there are no incident reports recording any pertinent events from that date. He alleges that HCDOC officials have told him that he was not at the HCDOC at the time or date he says the incident occurred.

The court identifies Mr. Rowell's claims for damages and injunctive relief, naming the HCDOC, Sgt. Vissa, and Nurse Bancroft as defendants, as follows:

> 1. HCDOC Sgt. Vissa violated Mr. Rowell's Fourteenth Amendment due process right to avoid punitive conditions of pretrial confinement, and to avoid being subjected to unreasonable force as a pretrial detainee, by punching him on the left side of his face, without provocation, causing

4

the right side of his face to strike a wall, opening a cut above his eye, giving rise to Sgt. Vissa's liability in his individual capacity under 42 U.S.C. § 1983.

2. HCDOC Nurse Bancroft violated Mr. Rowell's Fourteenth Amendment right to avoid punitive conditions of pretrial confinement by failing to provide him with medical care after he complained to her about being in a lot of pain and she saw he had blood on his face, giving rise to Nurse Bancroft's liability in her individual capacity under 42 U.S.C. § 1983.

3. Unnamed HCDOC officers who were present during the July 2018 incident conspired to cover it up, in violation of 42 U.S.C. §§ 1985 and 1986, by:

    a. failing to file an incident report, and

    b. ignoring or denying Mr. Rowell's grievances about what happened to him on July 15, 2018.

4. Unnamed HCDOC medical providers violated Mr. Rowell's Fourteenth Amendment right to avoid punitive conditions of pretrial confinement, giving rise to possible liability under 42 U.S.C. § 1983, by:

    a. denying his requests to see a specialist to evaluate whether he had suffered a head injury; and

    b. providing him with no medical care other than ibuprofen.

5. Defendants Sgt. Vissa and the HCDOC are liable under state law for Sgt. Vissa's tortious conduct amounting to assault, battery, and the intentional infliction of emotional distress, in that:

    a. Sgt. Vissa struck Mr. Rowell, handcuffed him to a chair, and subjected him to threats and offensive racist commentary, in the manner alleged in the complaint, resulting in Mr. Rowell's physical injuries, pain, suffering, and PTSD; and

    b. Sgt. Vissa's tortious conduct was undertaken within the scope of his HCDOC employment.

**Discussion**

I.  Source of Rights

Mr. Rowell cites the Eighth Amendment as shielding him from inhumane conditions of pretrial confinement.  The Eighth Amendment prohibition against cruel and unusual punishment applies to conditions of confinement affecting convicted inmates, not pretrial detainees.  This court has construed Mr. Rowell's claims as intending to assert that defendants violated his rights under the Fourteenth Amendment Due Process Clause, which prohibits conditions of confinement that amount to pretrial punishment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979).  Conditions may be punitive if they deny the inmate the "minimal measure of necessities required for civilized living." Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

II.  Sgt. Vissa (Claims 1 and 5(a))

    A.  Due Process Claim (Claim 1)

"[T]he Supreme Court has held that the appropriate standard for a pretrial detainee's Fourteenth Amendment excessive force claim is simply objective reasonableness." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 70 (1st Cir. 2016) (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473-74 (2015) (holding that

6

pre-trial detainee need prove that from objective viewpoint, officer's action was "not rationally related to a legitimate governmental objective or that it [was] excessive in relation to that purpose")).

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.  A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473 (citations omitted).  The factual allegations summarized as Claim 1 state a due process claim upon which relief can be granted against Sgt. Vissa in his individual capacity.

### B.   Intentional Torts (Claim 5(a))

The same factual allegations, and the alleged impact of Sgt. Vissa's conduct on Mr. Rowell, give rise to actionable

7

claims of the intentional torts of assault, battery, and the intentional infliction of emotional distress under New Hampshire law, naming Sgt. Vissa as the defendant.  See Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75 (D.N.H. 2013) ("A successful assault claim requires that '(1) the defendant . . . intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent apprehension of such contact.'" (citation omitted)); id. at 75-76 ("A defendant may be held liable for battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" (citation omitted)); see also Silva v. Warden, 150 N.H. 372, 374, 839 A.2d 4, 6 (2003); Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260, 723 A.2d 30, 33 (1998) ("one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress").  In the Order issued this date, the court has directed service of Claims 1 and 5(a) upon Sgt. Vissa in his individual capacity.

III. <u>Medical Care (Claims 2 and 4)</u>

    A.   <u>Standard</u>

The Due Process Clause imposes an obligation on state actors to refrain from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health and safety. <u>Coscia v. Town of Pembroke</u>, 659 F.3d 37, 39 (1st Cir. 2011). At a minimum, the plaintiff must allege facts showing that the defendant possessed a purposeful, knowing, or reckless state of mind, as "'liability for <u>negligently</u> inflicted harm is categorically beneath the threshold of constitutional due process.'" <u>Kingsley</u>, 135 S. Ct. at 2472 (citation omitted) (emphasis in original). "Proof of deliberate indifference requires a showing of greater culpability than negligence but less than a purpose to do harm . . . ." <u>Coscia</u>, 659 F.3d at 39 (citing <u>Farmer</u>, 511 U.S. at 835).[1]

"A serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that

---

[1] This court declines to determine, without a ripe motion requiring a ruling, whether <u>Kingsley</u> alters the mens rea standard that applies to Fourteenth Amendment medical care claims. See <u>Darnell v. Pineiro</u>, 849 F.3d 17, 36 (2d Cir. 2017) (consistency with <u>Kingsley</u> "dictates that deliberate indifference be measured objectively" in due process cases filed by detainees); <u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc) (applying <u>Kingsley</u>'s holding to failure-to-protect claims brought by pretrial detainees against individual defendants under the Fourteenth Amendment); <u>McKenney</u>

even a lay person would easily recognize the necessity for a doctor's attention." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016) (citation and internal quotation marks omitted). "Where it is shown that an officer was deliberately indifferent to a serious medical need of a pretrial detainee, no further mens rea of the officer — whether intent or motivation — is necessary to state a substantive due process claim." Id.

### B. Nurse Bancroft (Claim 2)

Mr. Rowell has alleged that Nurse Bancroft, whose first name is unknown, was unwilling to provide him with any medical care and did not refer his complaints to any of her supervisors in the HCDOC medical department after Sgt. Vissa struck him, when she saw he was bleeding from a cut above his eye and heard his pleas for help and complaints about being in a lot of pain. Mr. Rowell has stated an actionable due process claim of Nurse Bancroft's deliberate indifference to an apparently serious medical need. Accordingly, in the Order issued this date, the

---

v. Joyce, No. 2:16-CV-412-NT, 2016 WL 6304678, at *4 n.4, 2016 U.S. Dist. LEXIS 148759, at *11 n.4 (D. Me. Oct. 27, 2016) (R&R) ("where the conduct in question is 'purposefully or knowingly' applied, satisfaction of an objective standard is sufficient to establish liability" (citing Kingsley, 135 S. Ct. at 2472)).

court has directed service of Claim 2 upon Nurse Bancroft in her individual capacity and has directed her to answer that claim.

### C. Unnamed HCDOC Medical Care Providers (Claim 4)

Mr. Rowell has asserted that he submitted multiple request slips and verbal complaints about his injuries, asking for medical care and asking to see a specialist to determine if he had a head injury. He asserts he received only ibuprofen for his headaches and no referral to a specialist to determine if he had a head injury. Mr. Rowell's allegations do not demonstrate that any medical provider was actually aware that Mr. Rowell's pain and other symptoms required medication other than ibuprofen or a specialist's evaluation. The facts as pleaded, without more, fail to demonstrate deliberative indifference to a serious medical need. Accordingly, the district judge should dismiss Claim 4.

### IV. Cover-Up and Conspiracy (Claim 3)

Mr. Rowell's assertions about a cover up and conspiracy center on allegations that Sgt. Vissa used an offensive racially derogatory remark in saying that no none would believe his complaints about having been struck by Sgt. Vissa, his inability to obtain an incident report or other record of the July 15,

2018 incident even though there were other unnamed officers present during the incident, and the fact that HCDOC officials have told him that they have no record of Mr. Rowell having been at the HCDOC on the date and time in question.

> In order to state a cause of action arising under section 1985(3), a plaintiff must assert (a) racial or class-based discrimination; and (b) interference with a federally protected right.  Additionally, a claim of conspiracy must allege facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an unlawful agreement.

Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 318 (D. Mass. 2011).  Mr. Rowell's allegations regarding Sgt. Vissa's remark, the presence of other officers in the area, the absence of an incident report, and the lack of a record that Mr. Rowell was at the HCDOC at the date and time he alleges that the incident occurred do not suggest that any conspiracy existed to interfere with his rights, or otherwise give rise to a claim of a racially-discriminatory civil rights conspiracy that is not conclusory.  Accordingly, the civil rights conspiracy claim asserted under 42 U.S.C. § 1985(3) fails to state a claim upon which relief can be granted.  "[A]bsent a showing of conspiracy, [plaintiff] has no claim under § 1986, which extends liability to those who knowingly failed to prevent conspiracies under § 1985."  Maymi v. P.R. Ports Auth., 515 F.3d 20, 31 (1st Cir. 2008) (citing 42 U.S.C. § 1986).  Accordingly, the district

judge should dismiss Mr. Rowell's cover-up and conspiracy claims, summarized here as Claim 3.

V.  Defendant HCDOC

   A.  Federal Civil Rights Claims

Mr. Rowell has named the HCDOC as a defendant.  A county or other local government may not be held liable under 42 U.S.C. § 1983 for violating a plaintiff's federal constitutional rights under a theory of respondent superior.  See Iqbal, 556 U.S. at 677.  A plaintiff who brings a section 1983 action against a municipality "must identify a municipal policy or custom that caused the plaintiff's injury."  Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (citations and internal quotation marks omitted).  "[W]hen execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," then "the government as an entity" may be held responsible under § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  The facts alleged in this lawsuit fail to state a claim that any official policy or practice caused Mr. Rowell to suffer a violation of his federal civil rights as alleged in the Complaint.  Accordingly, the

HCDOC is not properly joined as a defendant to Mr. Rowell's civil rights claims.

### B. Tort Claims (Claim 5(b))

Under the doctrine of respondeat superior, an employer may be held liable vicariously for the torts of an employee if she or he was "'acting within the scope of his or her employment when his or her tortious act injured the plaintiff.'" Rand, 976 F. Supp. 2d at 76 (quoting Porter v. City of Manchester, 155 N.H. 149, 152, 921 A.2d 393, 397-98 (2007)).

> "[C]onduct falls within the scope of [an employee's] employment if: (1) it is of the kind she is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer."

Rand, 976 F. Supp. 2d at 76 (quoting Porter, 155 N.H. at 152, 921 A.2d at 397-98).

Mr. Rowell has alleged sufficient facts to state actionable claims of assault, battery, and the intentional infliction of emotional distress against the HCDOC, arising from its employment relationship with Sgt. Vissa, the circumstances of that officer's conduct in striking and threatening Mr. Rowell with further violence after he asked for more time before he was booked, and the impact of that incident on Mr. Rowell, as alleged in the Complaint and summarized in Claims 1 and 5.

Accordingly, the Order issued this date directs service of Claim 5(b) upon the HCDOC, an agency of Hillsborough County, under a theory of respondeat superior.

VI.   Claims for Injunctive Relief

In the complaint, Mr. Rowell seeks an injunction directing defendants to send him to see a specialist to evaluate and treat him for a head injury.  Mr. Rowell has been transferred from the custody of the HCDOC to the NHSP.  In the absence of claims for damages, "[a] prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release." Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014).  Accordingly, Mr. Rowell's request for injunctive relief is moot, and the district judge should dismiss his claims for injunctive relief from this action, leaving only the claims for damages that are the subject of the Order issued this date directing service of those claims.

## Conclusion

For the foregoing reasons the district judge should dismiss Claims 3 and 4; and dismiss Mr. Rowell's claims for injunctive relief.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be

extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                _____  
                                                Andrea K. Johnstone  
                                                United States Magistrate Judge

April 20, 2020

cc:  Mesfen A. Rowell, pro se