UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Mesfen A. Rowell

v.                                          Case No. 19-cv-419-JL

Hillsborough Cnty. Dep't
of Corrections et al.


## REPORT AND RECOMMENDATION

The defendants — the Hillsborough County Department of
Corrections ("HCDOC"), HCDOC Sergeant Anthony Vissa, and HCDOC
Nurse Luella Bancroft — have moved for summary judgment (Doc.
No. 51) on the argued grounds that plaintiff Mesfen A. Rowell —
an inmate at Hillsborough County House of Corrections ("HCHOC")
who is proceeding without an attorney – failed to timely exhaust
his administrative remedies, as required by the Prison
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before
filing this lawsuit.  Though HCDOC's Grievance Policy requires
inmates to submit grievances within fifteen (15) days of an
incident, Rowell did not file a grievance for the July 2018
incident at issue in this case until March 2019.  Undeterred,
Rowell contends that no administrative remedy was in fact
available to him because he was transferred to the New Hampshire
State Prison ("NHSP") – a state facility, not administered by
HCDOC – the day after the alleged July 2018 incident and did not
return to HCHOC until January 2019 – months after the fifteen-

1

day window for filing administrative grievances had passed.  He
also argues that the defendants waived their exhaustion defense
by responding to the substance of his untimely grievance.  He
therefore maintains that the PLRA does not preclude him from
filing suit and having a trial on the merits of his underlying
claims.

As explained below, genuine disputes of material fact
remain as to several questions, including: (1) whether
administrative remedies were actually available to Rowell, given
his transfer from HCHOC to NHSP the day after the alleged July
2018 incident; and (2) whether the availability and
accessibility of an administrative remedy under these
circumstances was known or knowable to Rowell.  Moreover, there
is a legal question unanswered by the parties' summary judgment
filings as to whether prison officials arguably waived their
right to raise an affirmative, failure-to-exhaust defense.
Accordingly, the district judge should dismiss the defendants'
motion for summary judgment and schedule an evidentiary hearing
in the nature of a bench trial on the issue of PLRA exhaustion
prior to a trial on the merits of Rowell's complaint.

## Background

### I.   Rowell's Arrest and Injuries

On July 15, 2018, Manchester Police arrested Rowell and, at
around midnight the next day (July 16), transported him to HCHOC

for booking.  See Booking Report (Doc. No. 51-4).  According to
the booking report, the HCDOC booking officer, Officer Rutzke,
noticed a one-inch-long abrasion over Rowell's right eyebrow,
inquired about what had happened, and asked whether Rowell had
received medical treatment.  Id.  Per the report, Rowell
answered, "[t]he cops did it," and "[n]o," prompting Officer
Rutzke to summon HCDOC Sgt. Vissa and Nurse Bancroft to examine
the abrasion.  Id.

     Rowell offers a different account of how he was injured.
In his complaint, he alleges that during his arrest or
transport, the Manchester Police used a taser on him, causing
him to be disoriented for most of the booking process.  Compl.
(Doc. No. 1, at 2).  Rowell claims that when he informed Sgt.
Vissa about the taser incident, Sgt. Vissa grabbed his arm,
pushed him into a corner of the property room, and struck his
face, causing an abrasion.  Id. at 3.  Sgt. Vissa also allegedly
threatened Rowell with more violence if he were to report the
incident.  Id.

     Rowell further asserts that when Nurse Bancroft arrived to
inspect the abrasion, he complained that he was in a lot of pain
and pleaded with her for help.  Id. at 4.  Nurse Bancroft,
however, purportedly continued the booking process instead of
providing care for his injuries and bleeding.  Id.

The following morning (July 16), Rowell was transported to court for his arraignment, at which he was represented by counsel.  Case Summary (Doc. No. 51-5).  Afterwards, he returned to HCHOC overnight before being transferred to NHSP the next day.  Booking Report (Doc. No. 51-4).  With one exception (a single day in August 2018), Rowell did not return to HCHOC until January 12, 2019, where he has consistently remained throughout this proceeding.  Release Report (Doc. No. 51-6).

**II. Rowell's Administrative Grievances**

Under HCDOC's Grievance Policy ("the Policy"), all inmates have the right to file a written grievance concerning any matter relating to their confinement.  See HCDOC Inmate Handbook (Doc. No. 51-3, at 20).  A grievance must be filed by the inmate who is directly affected by an alleged incident.  Id.  "No grievance(s) shall be accepted which is filed by a group or on behalf of a group of inmates."  Id.

Step 1 of the grievance process requires an inmate to make a "genuine attempt to seek an informal resolution of [a] problem with the staff member concerned."  Id.  If a grievance cannot be resolved informally, then the inmate may proceed to Step 2.  Per the Policy:

> The second step is initiated using the Inmate Request Form format.[1]  Fill out a request form requesting a

[1] The HCDOC Inmate Handbook submitted by the defendants (Doc. No. 51-3) does not explain what the "Inmate Request Form

> grievance form stating your problem and suggested
> remedy.  You must then submit the request form to your
> unit officer.  The grievance must be submitted within
> fifteen (15) days from the date of the alleged
> incident giving rise to the grievance.

Id.  Thereafter, at Step 3, "[a]n assigned staff member will
then have fifteen (15) days from receipt of [the] grievance to
investigate/review the alleged incident and provide a response
to [the inmate] unless there are extenuating circumstances."
Id.  The Policy provides no further steps, such as for an appeal
of the assigned officer's response.  Id.  A copy of this
procedure is given to each inmate brought to HCDOC.  See
Fitzpatrick Aff. (Doc. No. 51-2, ¶ 2).

On February 15, 2019 — more than six months after the
booking incident described above — Rowell informed Sgt. Vissa's
supervisor, HCDOC Lt. Timothy Fitzpatrick, that he was going on
a hunger strike.  Feb. 15, 2019 Fitzpatrick Mem. (Doc. No. 51-
7).  When asked about his reasons, Rowell initially answered
that he was "going to take it up with [his] attorney."  Id.  He
later disclosed that he "was assaulted by a staff member in
booking in July (2018)," suffered because of it, and "[j]ust
didn't" report the alleged incident.  Id.  Rowell stated at the
time that he could not remember who had assaulted him or whether
he was injured.  Id.

_____

format" is.  Nor does it lay out the process by which an inmate
may generally obtain or submit an Inmate Request Form.

On March 16, 2019, Rowell filed a grievance claiming that
he had been assaulted during his booking on July 16, 2018.
Grievance 19-00065 (Doc. No. 51-8, 55-1).  When Lt. Fitzpatrick
spoke with Rowell about why he was then reporting the incident,
Rowell reportedly said: "I was just going to let it go.  But now
I'm seeking damages.  I don't care what you do with the
Grievance.  I only filed the grievance to satisfy the courts.
I'll be suing for damages.  Money is the only resolution."  Mar.
17, 2019 Fitzgerald Report (Doc. No. 51-9).

On March 21, 2019, Rowell's grievance was denied.  The
HCDOC Captain's March 21, 2019 grievance response states:

> In regards to Inmate Mesfen Rowell's (61152) grievance
> (19-00065) in which he is claiming Sgt. Vissa
> assaulted him on 7/16/18 (When he arrived at the
> facility / (2) incarcerations ago).  Inmate Rowell was
> booked into the facility during this incarceration on
> 1/12/19.  Inmate Rowell does not comply with the
> Inmate Grievance procedure as stated in the Inmate
> Handbook (Page #18) (Step: 2)[:] "The grievance must
> be submitted with [sic] fifteen (15) days from the
> date of the alleged incident giving rise to the
> grievance[."]  On 7/16/2018 when Inmate Rowell was
> admitted into the facility he was observed w/ a pre-
> existing injury (abrasion above his right eyebrow
> approx. (1 inch) claiming "they [sic] cops did it[."]
> Sgt Vissa states at no time did he ever assault Inmate
> Rowell.[2]

---

[2] Several times in the defendants' supporting memorandum,
see, e.g., Defs.' Mot. for Summ. J. Mem. (Doc. No. 51-1. at 3),
defense counsel quotes the record inaccurately.  The court
strongly encourages counsel, going forward, to double-check all
quoted source materials before filing and to use brackets or
ellipses when material is altered for the sake of readability.

Grievance 19-00065 (Doc. No. 51-8, 55-1).  HCDOC Superintendent
David Dionne then provided his response on the same grievance
form on March 22, 2019, stating that no further action was
required.

In an affidavit, Lt. Fitzpatrick asserts that Rowell's
"grievance was denied because it did not comply with our
grievance policy deadline."  Fitzpatrick Aff. (Doc. No. 51-2,
¶ 9).  Lt. Fitzpatrick's affidavit further avers, "Despite [Mr.
Rowell's] grievance being denied on procedural grounds, I
interviewed Mr. Rowell due to the seriousness of his
allegations."[3]  Id. ¶ 10.

Rowell's complaint is both notarized and executed under
penalty of pains of perjury.  See Compl. (Doc. No. 1, at 7).
Rowell has asserted in the verified complaint that, after the
July 15, 2018 booking incident, he submitted verbal grievances
and inmate requests forms about the incident, and that those
grievances and forms were not answered and appear to have been
ignored and discarded.  Compl. (Doc. No. 1, at 4-6).

---

[3] Lt. Fitzpatrick states in his sworn affidavit that he
interviewed Rowell after the grievance was denied on March 21,
2019.  It appears from the face of his response to Rowell's
grievance, however, that he in fact interviewed Rowell or Sgt.
Vissa before Rowell's grievance was denied.  See Fitzpatrick
Mar. 17, 2019 Mem. (Doc. No. 51-9, at 1) (memorializing his
interview with Rowell).

7

## Summary Judgment Standard

"Summary judgment is appropriate when the record shows that there is no genuine dispute[4] as to any material fact[5] and the mov[ing party] is entitled to judgment as a matter of law." Walker v. President & Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (citations and internal quotation marks omitted); see also Fed. R. Civ. P. 56.  In considering summary judgment motions, the court "look[s] to all of the record materials on file, including the pleadings, depositions, and affidavits," Taite v. Bridgewater State Univ., Bd. of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014)), "read[s] the facts in the light most favorable to the non-moving party," and draws "all reasonable inferences in [that party's] favor," Lachance v. Town of Charlton, 990 F.3d 14 (1st Cir. 2021).  It does not, however, evaluate "the credibility of witnesses [ ]or weigh the evidence."  Taite, 999 F.3d at 93 (quoting Ahmed, 752 F.3d at 495).

---

[4] A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

[5] "Facts are material when they have the potential to affect the outcome of the suit under the applicable law."  Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)).

"To prevail on the affirmative defense of failure to exhaust" at summary judgment, like the defense raised by the defendants' motion here, "prison officials must show that no factfinder could reasonably conclude that the plaintiff exhausted . . . remedies [that were in fact available to him or her] before filing suit." Burns v. Croteau, No. 19-CV-007-LM, 2020 WL 6546057, at *2, 2020 U.S. Dist. LEXIS 207500, at *6 (D.N.H. Nov. 6, 2020) (citing Polansky v. McCoole, No. 13-cv-458-JL, 2016 WL 237096, at *3, 2016 U.S. Dist. LEXIS 6476, at *3 (D.N.H. Jan. 20, 2016)).  If a factfinder could reasonably find for the plaintiff on this issue, summary judgment must be denied.

## Discussion

The defendants contend that the PLRA precludes Rowell's lawsuit because he did not grieve the alleged July 16, 2018 incident giving rise to this lawsuit within fifteen (15) days, as required by HCDOC Policy.  Rowell objects, asserting that HCDOC's grievance process was unavailable to him because he was transferred to NHSP the day after the July 16, 2018 incident. He also contends that HCDOC waived its ability to raise the fifteen-day deadline by responding to a late-filed grievance form about the incident and, in his view, addressing his allegations on the merits.  As discussed below, Rowell's waiver argument is unavailing in this procedural posture, and genuine

disputes of material fact as to the availability of administrative remedies in Rowell's circumstances preclude summary judgment.  The district judge should thus deny the defendants' motion for summary judgment.

## I.   PLRA Requirements

Under the Prison Litigation Reform Act, "incarcerated plaintiffs must exhaust all available administrative remedies before bringing any federal action in respect to prison conditions," Burns, 2020 WL 6546057, at *3, 2020 U.S. Dist. LEXIS 207500, at *6 (citing 42 U.S.C. § 1997e(a)), including civil rights actions arising from isolated episodes of unlawful misconduct by prison officials, see Porter v. Nussle, 534 U.S. 516, 532 (2002).  As explained by the Supreme Court, this barrier to filing a lawsuit demands "proper exhaustion" of a prison's administrative remedies. Woodford v. Ngo, 548 U.S. 81, 84 (2006).  This "means using all steps that the [prison] holds out, and doing so properly (so that the [prison] addresses the issues on the merits)." Id. (emphasis in original).  As such, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).  Additionally, inmates "must . . . exhaust administrative remedies even where the relief sought — [including] monetary damages — cannot be granted by" the prison's administrative process. Woodford, 548 U.S. at 85.

Because failure to exhaust is an affirmative defense, rather than a jurisdictional issue, when raised under § 1997e(a), the "defendants bear the burden" of showing "both that administrative remedies were available and that the [inmate] failed to exhaust them." Burns, 2020 WL 6546057, at *3, 2020 U.S. Dist. LEXIS 207500, at *6 (citing, as an example, Fuqua v. Ryan, 890 F.3d 838, 844 (9th Cir. 2018)); see also Czekalski v. Hanks, No. 18-cv-592-PB, 2020 WL 7231358, at *12, 2020 U.S. Dist. LEXIS 231179, at *35 (D.N.H. Dec. 8, 2020).  If the defendants make that showing, the burden shifts to the inmate to "come forward with evidence" demonstrating "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him,'" Czekalski, 2020 WL 7231358, at *12, 2020 U.S. Dist. LEXIS 231179, at *35 (quoting Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc)), or that the prison arguably waived its right to rely on a procedural flaw with the inmate's exhaustion attempts.  See Ellison v. N.H. Dep't of Corr., No. 07-cv-131-JL, 2009 WL 424535, at *4 n.6, 2009 U.S. Dist. LEXIS 12976, at *14 n.6 (D.N.H. Feb. 19, 2009).

Though "[t]he First Circuit [Court of Appeals] has not addressed whether factual issues regarding exhaustion are the province of the judge or the jury," each Circuit that has "considered the question ha[s] held that it is for the

11

[district] court rather than a jury to resolve such issues."
Burns, 2020 WL 6546057, at *2, 2020 U.S. Dist. LEXIS 207500, at
*6 (collecting authority).  The same is true for district courts
in this Circuit.  See id.; Wilbur v. Fitzpatrick, No. 1:18-CV-
00255-NT, 2019 WL 1714435, at *4, 2019 WL 1714435, at *12 (D.
Me. Apr. 17, 2019), R&R adopted, 2019 WL 2291453, 2019 U.S.
Dist. LEXIS 89459 (D. Me. May 29, 2019).  Thus, if the summary
judgment record does not conclusively establish whether the
plaintiff exhausted their administrative remedies, or whether
the defendant is otherwise entitled to summary judgment, the
district court should conduct an evidentiary hearing to resolve
the exhaustion issue before a jury decides any factual questions
pertaining to the merits of the plaintiff's claims.  See, e.g.,
Albino, 747 F.3d at 1170-71 ("If a motion for summary judgment
is denied, disputed factual questions relevant to exhaustion
should be decided by the judge, in the same manner a judge
rather than a jury decides disputed factual questions relevant
to jurisdiction and venue."); Wilbur, 2019 WL 1714435, at *6 n.5
(describing the Circuit Court guidance as of 2019 on how to
procedurally address a PLRA-exhaustion defense).

## II.  Availability of an Administrative Remedy

The defendants contend that the PLRA bars Rowell's claims
because he failed to grieve the July 16, 2018 incident, during
which he was allegedly assaulted by officers, within the fifteen

12

(15) day window for filing such grievances.  No party disputes
that under the Policy, inmates must generally file grievances
within fifteen (15) days of an alleged incident being grieved.
It is also undisputed that Rowell did not file a grievance for
the alleged incident at issue until March 16, 2019, eight months
after July 16, 2018.  What remains in dispute, however, is
whether HCDOC's administrative grievance process was in fact
available to Mr. Rowell given his transfer to NHSP, a facility
operated by the New Hampshire Department of Corrections (not
HCDOC), one day after the alleged incident.

Though the defendants bear the burden of proof on this
issue, their legal arguments, cited legal authority, and
submitted evidence fail to fully confront the uncommon factual
aspects of this question head on, at least for satisfying the
demanding standard for a grant of summary judgment.  The Supreme
Court has recognized that there are at least "three kinds of
circumstances in which an administrative remedy, although
officially on the books, is not capable of use [by an inmate] to
obtain relief."  Ross v. Blake, 578 U.S. 1174, -- , 136 S. Ct.
1850, 1859 (2016).  First, "an administrative procedure may be
unavailable when (despite what regulations or guidance materials
may promise) it operates as a simple dead end — with officers
unable or consistently unwilling to provide any relief to
aggrieved inmates."  Id.  For example, a procedure might operate

as a "dead end" for purposes of the PLRA if "a prison handbook
directs inmates to submit their grievances to a particular
administrative office—but in practice that office disclaims the
capacity to consider those petitions." Id.  Second, "an
administrative scheme might be so opaque that it becomes,
practically speaking, incapable of use.  In this situation, some
mechanism exists to provide relief, but no ordinary prisoner can
discern or navigate it." Id.  Third, "interference with an
inmate's pursuit of relief," for example, by thwarting the
inmate "from taking advantage of a grievance process through
machination, misrepresentation, or intimidation[,] . . . renders
the administrative process unavailable" for purposes of PLRA
exhaustion. Id.

    Here, the evidence in the record suggests that the first
and second of these circumstances, or some hybrid of the two,
could reasonably be found to have rendered HCDOC's otherwise
generally accessible administrative grievance process
effectively unavailable to him.  The Policy submitted by the
defendants provides little to no instruction to former inmates
of the facility on how to grieve an incident once they are
transferred to a facility not operated by HCDOC.  Under the
Policy, to begin the written grievance process, the inmate must
use the Inmate Request Form format – a term not defined in the
Policy or the other evidentiary materials submitted by the

defendants – to request a grievance form.  The Policy does not
specify how a former inmate can use the requested format from
outside the facility or what format they can use in lieu of it.
The Policy also requires the inmate to submit the request form
to their unit officer.  Again, the Policy does not specify who
the appropriate contact would be one the inmate departs the
facility.  Nor does it list an additional contact or a mailing
address for the submission of administrative grievances by
inmates who no longer reside at HCDOC.  The affidavit of
Lt. Fitzpatrick – the only affidavit or declaration submitted by
the defendants – does not clarify whether there are any other
policies or procedures, formal or informal, that would have
provided Rowell with guidance on how to timely grieve the
alleged July 16, 2018 incident from outside a HCDOC facility.[6]
And Rowell's verified complaint specifically states that other
grievances or request forms he submitted about the incident were
not answered and appear to have been ignored or discarded.

The defendants contend that, despite the above, HCDOC's
grievance procedure was not a "dead end" and was "clear" for
Rowell because (1) he successfully filed thirty-two (32)
grievances between January 12, 2019 – when he returned to HCHOC

---

[6] In moving for summary judgment, the defendants did not
submit any evidence regarding the administrative grievance
procedure at NHSP.  As such, the summary judgment record is
silent as to whether Rowell could have filed a grievance at NHSP
for any incidents that occurred while he was HCHOC.

– and the end of the year, (2) was assisted with procedural questions during the filing of three of these grievances, and (3) was aware of the PLRA exhaustion requirements when interviewed by Lt. Fitzpatrick in March 2019.  But these facts, while not in dispute, are beside the point.  Each occurred after Rowell had returned to HCDOC and thus do not speak to whether HCDOC's grievance procedure was effectively available to and "capable of use" by an inmate from outside of an HCDOC facility to obtain relief.  See Ross, 136 S. Ct. at 1859.  Said in the language of Rule 56, the defendants' cited facts fail to show that there is no genuine dispute as to whether HCDOC's grievance process was in fact capable of use by Rowell after July 17, 2018 when he was incarcerated outside of the facility.

The defendants' reliance on Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34–35 (1st Cir. 2002), fails to persuade the court that they are entitled to summary judgment.  In that case, the plaintiff – an inmate who was transferred among various corrections facilities administered by the Puerto Rico Administration of Corrections ("AOC") and then a federal corrections facility months after the events giving rise to his claim – argued that he was under no obligation to exhaust AOC remedies before filing suit because he was no longer an AOC prisoner.  Id. at 33.  The First Circuit found that the Puerto Rico AOC regulations, while limited in their application "'to

16

all the inmates in penal institutions administered by [the] Agency,'" did not exclude transferred inmates from accessing available remedies under those regulations as they did not "explicitly prevent[]" transferred inmates from filing grievances while "temporarily housed at another facility."[7]  Id. at 35.  The Medina court concluded that the fact that the inmate "happened to be a prisoner in various locations, and under the custody of different officials," did not per se affect his obligation to exhaust his available administrative remedies before filing suit.[8]  Id.

Rowell's circumstances are different.  In Rowell's case, the record regarding the Policy's applicability to transferred inmates is unclear, the time that elapsed between the alleged incident and Rowell's transfer to the custody of a different entity's facility was brief (one day), and that transfer was long-lasting, not short-term.  Though not a common scenario, at

---

[7] The Medina-Claudio Court did not specify whether "another facility" referred to one of the many AOC facilities that housed the inmate or the federal corrections facility where he resided when he filed his complaint.  To the extent the Court was referring to AOC facilities, it appears from the appellate briefing that the AOC's grievance procedures allowed inmates to start administrative proceedings for prison conditions in other AOC facilities.  (The briefing did not include a copy or summary of the full grievance policy, possibly due in part to the focus of the inmate's appeal on whether he had to generally comply with the AOC regulations rather than the availability of specific procedures under the AOC regulations.)

[8] Rowell's counterarguments do not dispute this ruling.

least two district courts that have considered exhaustion issues
similar to those presented here have denied summary judgment on
exhaustion grounds.  See Parmeley v. McCall No. 2:16-cv-01534-
CLS-SGC, 2019 WL 2499621, at *4, 2019 U.S. Dist. LEXIS 100054,
at *11 (N.D. Ala. Apr. 10, 2019), R&R adopted, 2019 WL 2491710,
2019 U.S. Dist. LEXIS 99768 (N.D. Ala. June 14, 2019); Bradley
v. Washington, 441 F. Supp. 2d 97, 102-03 (D.D.C. 2006).  In
Parmeley, for example, a district court denied summary judgment
where a city jail's grievance procedure was arguably unavailable
to an inmate who was transferred to another facility nearly
seven days after the incident underlying his complaint.  2019 WL
2499621, at *4, 2019 U.S. Dist. LEXIS 100054, at *11.  Similar
to the grievance policy at issue here, the city jail's grievance
procedure required inmates to first attempt to resolve their
grievances informally with an officer.  Id.  If informal
resolution was not possible, the inmate was then required to
obtain a grievance form from a correctional officer on duty.
Id.

    In moving for summary judgment, the defendants "point[ed]
to no provision in the [city jail's] handbook addressing the
procedure for a transferred inmate to fully utilize the
grievance procedure."  Id.  As such "it [wa]s not clear," in the
district court's view, how [the transferred inmate] could have
attempted informal resolution with the Detention Officer on

duty, obtained a grievance form from that officer, or effectuated an appeal."[9]  Id.  The court therefore ruled that the defendants failed to demonstrate how the city jail's grievance procedures were in fact available to the plaintiff following his transfer for purposes of obtaining summary judgment.  See also Bradley, 441 F. Supp. 2d at 102-03 (because inmate had been transferred away from D.C. jail shortly after incidents occurred, and jail's grievance procedure made "no provision for the submission of complaints by [inmates] no longer detained," prison officials had not demonstrated that inmate had failed to exhaust "available" remedies).

On the current record, genuine disputes of material fact similarly exist as to whether administrative remedy procedures were in fact available to Rowell after his transfer.  As such,

---

[9] The court notes that even though there was no clear process, Parmeley attempted to comply by mailing two letters to the city jail requesting a grievance form, neither of which the jail responded to.  The Court of Appeals has not addressed whether an inmate must make some affirmative efforts to comply with an administrative grievance process, even if those procedures are not capable of use by him, in order to overcome an exhaustion-based defense.  But see Napier v. Laurel Cty., 636 F.3d 218, 223 (6th Cir. 2011) ("The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.").  Nor have the defendants raised such an argument.  As such, this court does not find, for purposes of the defendants' motion for summary judgment, that Rowell's failure to do something about the July 2018 incident until his return to HCDOC, obviates any genuine disputes of material fact as to whether HCDOC's Policy was capable of use by Rowell.

the district judge should deny the defendants' motion for
summary judgment.

## III. Waiver of Exhaustion Defense

In addition to arguing that HCDOC's grievance process was
unavailable, Rowell also claims that the defendants waived their
failure-to-exhaust defense by responding to the substance of his
untimely filed grievance on the merits.  While a prison that
ignores a potential procedural bar and instead decides "the
substance of an untimely filed grievance . . . on the merits may
arguably be deemed to have waived its . . . failure-to-exhaust
defense," Ellison v. N.H. Dep't of Corr., No. 07-cv-131-JL,
2009 WL 424535, at *4 n.6, 2009 U.S. Dist. LEXIS 12976, at *14
n.6 (D.N.H. Feb. 19, 2009), the record is clear in this case
that HCDOC did not disregard the timeliness issue here.

In response to Rowell's late-filed grievance, prison
officials explicitly noted that he "[did] not comply with the
Inmate Grievance procedure as stated in the Inmate Handbook"
that his "grievance . . . be submitted with (sic) fifteen (15)
days from the date of the alleged incident . . . .'"  HCDOC
Inmate Handbook (Doc. No. 51-3, at 20).  As such, prison
officials explicitly noted Rowell's failure to exhaust, arguably
as an independent ground for recommending no further action on
Rowell's grievance.

The fact that prison officials also responded to Rowell's underlying allegation – that he was assaulted during booking – does not necessarily mean that the prison waived its right to enforce its procedural rule for untimely complaints.  Though the First Circuit Court of Appeals has not yet ruled on this issue, a plurality of other Circuit Courts have held that prisons waive their procedural objections to considering the merits of a grievance and thus their exhaustion defense if they do not explicitly note or address the procedural defect in rejecting the grievance.  See, e.g., Whatley v. Smith, 898 F.3d 1072, 1084 (11th Cir. 2018) ("[A] prison waives its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it does not explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level." (emphasis in original)); Hammett v. Cofield, 681 F.3d 945, 948 (8th Cir. 2012) (finding waiver when prison's response to the grievance "did not note or address" the procedural defect and instead denied grievance on the merits); Reed-Bey v. Pramstaller, 603 F.3d 322, 323 (6th Cir. 2010) (placing burden on prison to "invoke its procedural bar" rather than "dismiss[ing] grievance on the merits"); Conyers v. Abitz, 416 F.3d 580, 585 (7th Cir. 2005) (holding that "a procedural shortcoming like failing to follow the prison's time deadlines

amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming" in denying the grievance).

Here, HCDOC officials arguably did exactly what was asked by these Circuit Court decisions by affirmatively invoking the Policy's procedural rule when rejecting Rowell's untimely-filed grievance.  See Whatley, 898 F.3d at 1084 ("to preserve its procedural objection, the prison must affirmatively invoke the procedural rule at the administrative level").  And while their response does not explicitly state "Rowell's grievance is rejected on x basis" – where "x" could be solely procedural grounds, solely substantive grounds, or dual bases – their response does not suggest that, by addressing Rowell's assault allegation, they had decided to overlook, ignore, or render secondary the procedural untimeliness of Rowell's grievance. Compare with Conyers, 416 F.3d at 585[10] (rejecting defendants'

_____

[10] To clarify, in Conyers, the Seventh Circuit Court of Appeals considered whether a prison had waived its exhaustion defense where the prison had argued that the plaintiff's grievance was "dismissed for both untimeliness and lack of merit."  Id. at 585.  The Court of Appeals rejected that characterization of the prison's dismissal, finding that on record before it, "the grievance was principally rejected on the merits with an ambiguous, secondary observation that it was untimely."  Id.  This was because the prison's grievance examiner, in recommending dismissal of the plaintiff's administrative grievance, had reasoned that the plaintiff was responsible for the complained-of conduct.  The examiner then "reminded" the plaintiff-inmate of the grievance submission deadline.  Id. at 583.  It was only on appeal of the grievance did a different examiner recommend dismissal on the grounds of

argument that an inmate's grievance was dismissed on both untimeliness and substantive grounds where the first-level grievance examiner simply "reminded" the inmate about the filing deadline after responding to the merits).

Neither Rowell nor the defendants have cited in their briefing any case authority directly addressing comparable circumstances – that is, where a prison officer notes the untimeliness of a grievance and also addresses a grievance on the merits without indicating the grounds for denying the grievance – perhaps given the perception that the availability of an administrative remedy was the more forefront exhaustion issue.  Nevertheless, the district court need not definitively decide this waiver issue against Rowell at this time, given the genuine disputes of material fact discussed above, see Part I, supra, necessitating further proceedings.  Accordingly, the district judge should reject Rowell's waiver argument without prejudice to his ability to renew the argument at a later procedural stage, during which both parties can provide more precise support as to their positions on the potential waiver issue.

---

"the untimeliness of the original complaint."  Id.  Those are not the circumstances in this case.

## Conclusion

For the reasons stated above, the district judge should deny the defendants' motion for summary judgment (Doc. No. 51) and order the clerk's office to set up a case management conference for purposes of scheduling an evidentiary hearing before the court to resolve the genuine disputes of material fact as to administrative exhaustion, prior to a trial on the merits of the claims in this case.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____

Andrea K. Johnstone
United States Magistrate Judge

September 23, 2021

cc:  Mesfen A. Rowell, pro se
     Robert S. Carey, Esq.
     Meredith Rose Farrell, Esq.